**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ROLAND F. CHALIFOUX, JR., D.O.,

   Plaintiff,

v.

WETZEL COUNTY HOSPITAL, INC.;
WEST VIRGINIA UNITED HEALTH SYSTEM, INC.,
d/b/a West Virginia University Health System or
WVU Health System; DONALD BLUM, M.D.;
NIRAJ MOHAN, M.D.; MATTHEW SOKOS, M.D.;
HANY TADROS, M.D.; SEAN SMITH; and
JESSICA HUFFMAN,

   Defendants.

> ELECTRONICALLY
> FILED
> 12/27/2022
> U.S. DISTRICT COURT
> Northern District of WV

Civil Action No. 5:22-Cv-313
Judge   Bailey

### COMPLAINT

   COMES NOW the Plaintiff, Roland F. Chalifoux, Jr.,
D.O. and for his Complaint for antitrust, violation of due
process and defamation against Defendants states as follows:

### PARTIES

   1. Plaintiff Roland F. Chalifoux, Jr., D.O. is a
physician with his principal place of residence in Belmont
County, Ohio, but practicing medicine in Wetzel County, West
Virginia.

   2. Defendant Wetzel County Hospital, Inc. ("WCH") is
a non-profit domestic corporation with its principal place of
business in New Martinsville, Wetzel County, West Virginia.

   3. Defendant West Virginia United Health System, Inc.
d/b/a West Virginia University Health System or WVU Health

1

System ("WVU Health") is a non-profit domestic West Virginia corporation with its principal place of business located in Morgantown, Monongalia County, West Virginia.

4.   Defendant Donald Blum, M.D. is a resident of Wetzel County, West Virginia and a doctor conducting business in Wetzel County, West Virginia.

5.   Defendant Niraj Mohan, M.D. is a resident of Wetzel County, West Virginia and a doctor conducting business in Wetzel County, West Virginia.

6.   Defendant Matthew Sokos, M.D. is a resident of Wetzel County, West Virginia and a doctor conducting business in Wetzel County, West Virginia.

7.   Defendant Hany Tadros, M.D. is a resident of Wetzel County, West Virginia and a doctor conducting business in Wetzel County, West Virginia.

8.   Defendant Sean Smith is a resident of Wetzel County, West Virginia and conducts business in Wetzel County, West Virginia.

9.   Defendant Jessica Huffman is a resident of Wetzel County, West Virginia and conducts business in Wetzel County, West Virginia.

## JURISDICTION AND VENUE

10.   Defendants' actions violated Section 1 of the Sherman Act, causing injury to Plaintiff.  Plaintiff seeks

2

damages for his lost revenue and reputation as a result of Defendants' actions against him.

11.   This action arises under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble the amount of damages incurred by Plaintiff as a result of the violation by Defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1; under Section 16 of the Clayton Act, 15 U.S.C. § 26, to secure equitable relief against a continuation of the violations.   Interstate commerce for medical services is substantially affected by Defendants' conduct alleged herein.   This court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1337(a).

12.   Supplemental jurisdiction over Plaintiff's additional claims for Sham Peer Review/Violation of Due Process, defamation, civil conspiracy and tortious interference exists under 28 U.S.C. § 1367.

13.   The acts and omissions complained of herein occurred in Wetzel County, West Virginia, and therefore jurisdiction and venue are proper with this Court.

### Relevant Market for the Sherman Act Claim

14.   The relevant product market (more precisely, a "service" market) consists of pain management care provided to patients by physicians trained in pain management, treatment which is provided only by physicians who are specialized in providing pain management care.

3

15. The relevant geographic market is pain management care for patients in the Ohio Valley (West Virginia and Ohio) including from roughly Bethany, Brooke County, West Virginia to Point Pleasant, Mason County, West Virginia and surrounding counties on both sides of the Ohio River.

16. WVU Health is the only health system serving the community in New Martinsville, Wetzel County, West Virginia, whose residents rely on it for pain management care services.

17. Defendant WVU Health has dominant market power by owning and operating Defendant WCH; Camden Clark Medical Center in Parkersburg, West Virginia; Reynolds Memorial Hospital in Glen Dale, West Virginia; Barnesville Hospital in Barnesville, Ohio; Harrison Community Hospital in Cadiz, Ohio; Jackson General Hospital in Ripley, West Virginia and Wheeling Hospital in Wheeling, West Virginia; all of which fall within the mid-Ohio Valley and relevant geographic market for this matter. As such, Defendant WVU Health controls more than 50% of the market there for pain management care. This encompasses over 300,000 residents, travelers and tourists.

## FACTS RELEVANT TO ALL COUNTS

18. Dr. Chalifoux is an osteopathic physician specializing in pain management.

4

19. Dr. Chalifoux had certain privileges to see patients and perform certain procedures at Defendant WCH.

20. As such, Dr. Chalifoux was subject to certain bylaws, policies and procedures at Defendant WCH.

21. Similarly, those same bylaws, policies and procedures were required to be followed by Defendant WCH.

22. Accordingly, those bylaws, policies and procedures created certain due process rights to which Dr. Chalifoux was entitled.

23. On or about June 16, 2022, Defendant WCH wrongfully summarily suspended Dr. Chalifoux' privileges.

24. Defendant WCH's bylaws provide that the President, among others, may summarily suspend a physician's privileges when there is an immediate danger.

25. The sole incident that provided the basis for Defendant WCH's summary suspension of Dr. Chalifoux' privileges occurred on June 6, 2022.

26. Defendant Sean Smith, President of Defendant WCH who authored the summary suspension letter testified under oath that he was aware of the incident on the same day that it happened but did not summarily suspend Dr. Chalifoux' privileges until June 16, 2022, ten days later.

27. Defendant Smith appointed Defendant Huffman to investigate the allegations against Dr. Chalifoux.

5

28.   Defendant Huffman interviewed Defendant WCH's obviously biased employee witnesses but never interviewed Dr. Chalifoux or the patient.

29.   Further, Defendant Smith testified that he permitted Dr. Chalifoux to perform three more procedures after he was aware of the incident of June 6, 2022 and before the summary suspension of June 16, 2022.

30.   Further, Defendant Smith testified that, since he is not a health care professional, he consulted with health care professionals prior to making the decision to summarily suspend Dr. Chalifoux' privileges, but he consulted with members of the Medical Executive Committee ("MEC"), including, but not limited to Defendant Dr. Donald Blum, Defendant Dr. Mathew Sokos, Defendant Dr. Niraj Mohan and Defendant Dr. Hany Tadros, all of whom were the same members of the MEC who conducted a hearing on July 1, 2022 pursuant to Defendant WCH's bylaws and Credentials Manual to consider terminating the summary suspension on which they were consulted.

31.   Defendant Smith's consultation with these doctors and the failure of Defendants WCH and WVU Health to disclose this clear conflict of interest amounted to a "Sham Peer Review."

32.   Defendant WVU Health provided counsel and advice to Defendants WCH, Blum, Sokos, Mohan, Tadros, Smith and Huffman

6

who all conspired to deprive Dr. Chalifoux of his due process
rights contained in Defendant WCH's bylaws.

33.   Prior to the MEC hearing on July 1, 2022,
Defendants WCH and WVU Health failed to provide Dr. Chalifoux
with a copy of the complaint against him and a copy of any
witness statements.

34.   As one would expect, the MEC upheld Defendant
Smith's summary suspension of Plaintiff.

35.   Plaintiff exercised his right under the bylaws to
appeal the MEC's decision to uphold the summary suspension to
Defendant WCH's Board of Directors ("Board").

36.   Defendant WCH's Board consists of unknown and
undisclosed members.

37.   Plaintiff Chalifoux presented a Position
Statement to the Board in support of his appeal but was
wrongfully prohibited by Defendants WCH and WVU Health from
making any oral presentation or even appearing before the Board.

38.   As one would expect, the Board rubber-stamped the
summary suspension of Plaintiff.

39.   Plaintiff sought injunctive relief from the
Circuit Court of Wetzel County, West Virginia, but was denied as
well.

40.   Upon denial of injunctive relief from the Circuit
Court of Wetzel County, West Virginia, Defendants WCH and WVU

7

Health reported the summary suspension to the National
Practitioner Data Bank ("NPDB") and the West Virginia Board of
Osteopathic Medicine ("WVBOM").

41.   The report to NPDB pertaining to the wrongful
summary suspension of Plaintiff Chalifoux is available to
licensing bodies, credentialing bodies, health care facilities,
professional malpractice insurers and others.

42.   WVBOM has opened an investigation into Dr.
Chalifoux and the wrongful summary suspension.

43.   During this same period of time, Defendants WCH
and WVU Health were recruiting and hired Dr. Luay Mrad who
specializes in pain management just as does Dr. Chalifoux.

44.   Defendants WCH and WVU Health promoted Dr. Mrad
with billboards at both ends of town touting that "YOUR PAIN IS
UNDER NEW MANAGEMENT."

45.   Defendants WCH and WVU Health intentionally and
in violation of the law drove Dr. Chalifoux out of the market
area in an attempt to limit and control competition and
monopolize the market share to their benefit.

46.   All Defendants engaged in a civil conspiracy to
carry out a "Sham Peer Review" with the intent to cause
financial harm to Dr. Chalifoux.

47.   Dr. Chalifoux' reputation has been damaged by the
acts of all Defendants.

8

48.   Dr. Chalifoux has suffered damages and financial harm as a result of the conduct of all Defendants.

## Count I
### (Restraint of Trade in Violation of Section 1 of the Sherman Act)

49.   Plaintiff incorporates herein all statements and allegations contained in this Complaint.

50.   Defendants WCH and WVU Health's actions constitute an agreement to restrain trade, by granting exclusive rights to Dr. Mrad under their employment to the exclusion of competition for pain management services.

51.   Defendants then acted unreasonably, in furtherance of the plan to oust Dr. Chalifoux, by summarily suspending the privileges of Plaintiff Chalifoux at Defendant WCH, reporting the summary suspension to the NPDB and making a Complaint against Plaintiff Chalifoux to WVBOM, based on a harsh disciplinary action that makes it virtually impossible for Plaintiff Chalifoux to obtain new medical staff privileges at any other hospital or licensure in other states.

52.   Defendants enforced the plan to oust Dr. Chalifoux by conspiring to deprive him of his due process rights under the hospital bylaws thus depriving the relevant market of Dr. Chalifoux' pain management services by taking the draconian action against him of a summary suspension in furtherance of the plan to oust Dr. Chalifoux, and thereby destroying his ability to compete

9

in the relevant market against Dr. Mrad and Defendants WCH and WVU Health.

53.   Defendants' agreement to take draconian punitive action against Plaintiff Chalifoux to summarily suspend his privileges in furtherance of the plan to oust Dr. Chalifoux was far more excessive than what would have been justified even under the pretextual case that they built against him, and in furtherance of their enforcement of the plan to oust Dr. Chalifoux Defendants reported their baseless action against Plaintiff Chalifoux to NPDB and WVBOM in order to cause a boycott of his services throughout West Virginia and Ohio.

54.   Defendants' actions were undertaken with a common design, understanding, and unity of purpose with Dr. Mrad, in order to exclude Plaintiff Chalifoux from the relevant market, thereby constituting an unlawful agreement under Section 1 of the Sherman Act and Section 4 of the Clayton Act.

55.   Plaintiff Chalifoux provided pain management services that were in competition with pain management services provided by Dr. Mrad pursuant to his employment with Defendants WCH and WVU Health and, by excluding Plaintiff Chalifoux, Defendants' concerted actions produced anticompetitive effects in the relevant market.

56.   Defendants' concerted actions reduced the competition in the relevant market for pain management services,

by effectively excluding Plaintiff from 100% of the relevant market.

57. Defendants' concerted actions reduced the availability of greater options for pain management care, including higher quality pain management care, of patients.

58. Defendants' concerted actions imposed, and continue to impose, an unreasonable restraint on trade that has an anticompetitive effect on the relevant market.

59. Defendants' concerted actions to exclude Plaintiff Chalifoux is a *per se* violation of antitrust laws because it is plainly anticompetitive; Defendants' foregoing actions tend to restrict competition and decrease availability with respect to pain management care services for patients.

60. In the alternative, Defendants' concerted actions are unlawful pursuant to the rule of reason, by unreasonably excluding competition without any pro-competitive justification for the collusion.

61. The purpose and the effect of the exclusion of Plaintiff Chalifoux from the relevant market are anticompetitive and caused antitrust injury, by reducing the availability of physicians for pain management services and options, limiting the number of pain management physicians available to patients, and preventing the transfer of patients to better care at another pain management facility or practice.  Defendants' actions thereby

11

injured competition for the provision of pain management care medical services to hospitalized patients, to the detriment of consumers of medical care.

62.   Patients who travel from West Virginia, Ohio and other states to the Wetzel County and Mid-Ohio Valley Region are deprived, as a result of Defendants' foregoing actions, from receiving more competitive care, thereby substantially affecting interstate commerce.

63.   Defendants' concerted actions have interfered with, deterred and discouraged other physicians on staff at Defendants WCH and within Defendant WVU Health and from West Virginia and Ohio from providing referral and other services to patients, thereby harming the consumers of medical services and causing additional antitrust injury.

64.   Defendants' concerted actions have directly and proximately caused Plaintiff Chalifoux to lose revenue from the services that Plaintiff Chalifoux had been providing and would have continued to provide to patients had they not been excluded.

65.   Plaintiff Chalifoux has lost market share and patient volume as a direct result of Defendants' foregoing violation of Section 1 of the Sherman Act.

66.   This exclusion of Plaintiff Chalifoux from the relevant market has reduced the quality and quantity of services available for patients and reduced the overall output of pain

management care services in the relevant market.

67.   Patients are unlikely to sue for the loss in the quality and quantity of pain management care services, and thus there is no potential for duplicative recovery or complex apportionment of damages.

68.   Plaintiff Chalifoux will continue to suffer injury to his business and property in the future unless such acts and practices by Defendants are terminated.

69.   In addition, Plaintiff is entitled to recover his attorney's fees and costs from Defendants for their antitrust violations.

### Count II
**(Sham Peer Review/Violation of Due Process)**

70.   Plaintiff Chalifoux incorporates herein all statements and allegations contained in this Complaint.

71.   Medical staff bylaws require due process under West Virginia law per *Mahmoodian v. United Hosp. Ctr., Inc.,* 404 S.E.2d 750 (W.Va. 1991).

72.   Plaintiff Chalifoux was on the medical staff at Defendant WCH at all relevant times and was a party to the Bylaws of Defendants WCH and WVU Health.

73.   Plaintiff Chalifoux fully performed all of his obligations under the Bylaws.

74.   Plaintiff Chalifoux did not breach the Bylaws in

any material way.

75.   Defendants materially breached their due process obligations under the Bylaws by summarily suspending Plaintiff Chalifoux without satisfying the Bylaws' requirement that a summary suspension be imposed only "...whenever action must be taken **immediately in the best interest of patient care or safety**..." (emphasis added)(Bylaws – Credentials Manual Section 4.2.1).

76.   Defendants' summary suspension denies Plaintiff Chalifoux his rights under the Bylaws to care for patients.

77.   Defendants' violated the Bylaws by allowing Plaintiff Chalifoux to perform three additional procedures on patients at Defendant WCH between June 6, 2022, the date of the incident which was the subject matter of the summary suspension, and June 16, 2022, the date of the summary suspension; thus indicating there were no grounds for the summary suspension as the ten day delay evidences an absence of the requirement in the Bylaws that "...action must be taken immediately in the best interest of patient care or safety..."

78.   Prior to the summary suspension on June 16, 2022, Plaintiff Chalifoux had no notice of allegations of conduct impacting patient care or safety concerning his practice.

79.   Defendants materially breached the Bylaws in the following ways:

A)   Summarily suspending Plaintiff Chalifoux over a matter that did not immediately impact patient care or safety and permitting Plaintiff Chalifoux to conduct three more procedures at Defendant WCH after the incident forming the basis for the summary suspension on June 6, 2022 and the summary suspension on June 16, 2022;

B)   Defendant Huffman failing to adequately investigate the allegations against Plaintiff Chalifoux by failing to interview him and the patient involved in the procedure on June 6, 2022;

C)   Defendant Smith consulting with Defendants Blum, Tadros, Mohan and Sokos prior to summarily suspending Plaintiff Chalifoux then Defendants Blum, Tadros and Sokos comprising the MEC which conducted a hearing concerning Plaintiff Chalifoux' summary suspension on July 1, 2022 without prior disclosure by Defendants WCH and WVU Health that those Defendants conducting the hearing had consulted with Defendant Smith regarding the summary suspension in violation of Section 5.4 of the Credentials Manual;

D)   Defendants WCH and WVU Health failing to provide proper pre-hearing disclosures of the complaint against Plaintiff Chalifoux as well as witness statements prior to the July 1, 2022 hearing in violation of Section 5.6 of the WCH Credentials Manual;

E) Defendants WCH and WVU Health failing to present any competent expert opinion or testimony from a qualified expert in the field of pain management and neurosurgery concerning the patient care and safety concerns during the June 6, 2022 procedure by Plaintiff Chalifoux;

F) Defendants WCH and WVU Health introduction of irrelevant and prejudicial evidence at the hearing before the MEC on July 1, 2022 that went beyond the scope of the notice of hearing;

G) Defendant WCH and WVU Health failing to permit Plaintiff Chalifoux to make oral presentation to the Board on August 3, 2022 of his appeal of the MEC's decision following the hearing on July 1, 2022; and

H) Such other ways as may come to light through discovery.

80. Defendants WCH and WVU Health ultimately imposed a penalty on Plaintiff Chalifoux based on its Sham Peer Review and violation of his due process rights that was far harsher than what was appropriate and justified in violation of the Bylaws and their implied covenant of good faith and fair dealing under the Bylaws.

81. Defendants WCH and WVU Health further caused harm and damage to Plaintiff Chalifoux by ultimately converting the summary suspension to a termination of his privileges at

Defendant WCH and by reporting said termination to NPDB and
WVBOM.

82.   Defendants WCH and WVU Health's summary
suspension of Plaintiff Chalifoux was in violation of the
express federal minimum standard for summary suspensions, as set
forth in the Health Care Quality Improvement Act ("HCQIA").
This summary suspension was not based on legitimate peer review,
and in fact constituted a Sham Peer Review.  Defendants WCH and
WVU Health's actions did not comply with the immunity provisions
of HCQIA.

83.   As a direct and proximate result of the "Sham
Peer Review" and absence of due process, Dr. Chalifoux has and
will suffer damages in the form of lost wages and earnings, loss
of reputation, loss of earning capacity, increased medical
malpractice premiums and other consequential damages as shall
come to be learned through discovery.

## Count III
### (Defamation)

84. Plaintiff Chalifoux incorporates herein all
statements and allegations contained in this Complaint.

85.   Defendants asserted false and defamatory
statements about Plaintiff Chalifoux, asserting that he had
committed a very serious breach of his professional
responsibilities that would justify the draconian action of a

summary suspension.

86.   Defendants published these statements in an unprivileged manner to third parties, including without limitation Defendants' informing administrators and physicians who were not on the Medical Executive Committee as well as NPDB and WVBOM.

87.   Defendants' publication of these statements was in bad faith and not privileged.

88.   Defendants WCH and WVU Health's publication of defamatory statement were in the form of a report of the summary suspension and subsequent termination to NPDB that was based on a Sham Peer Review and a Complaint to WVBOM that was also based on a Sham Peer Review which were not privileged by HCQIA.

89.   Defendants WCH and WVU Health's statements defamed Plaintiff Chalifoux by falsely representing and implying that he had a quality-of-care deficiency so severe that it justified the draconian sanction of a summary suspension without notifying NPDB or WVBOM that the summary suspension was based on Sham Peer Review and violation of Plaintiff Chalifoux' due process rights.

90.   The defamatory statements about Plaintiff Chalifoux resulting in the revocation of his privileges at Defendant WCH caused his colleagues (upon whom Chalifoux relies for referrals) and patients to falsely think that Plaintiff

Chalifoux' professional services were somehow so egregiously improper and inadequate that a summary suspension was necessary to restrain him.

91.   Defendants knew that their statements disparaging Plaintiff Chalifoux were false.  In the alternative, to the extent that any of the Defendants did not know their statements were false, then those Defendants were negligent in publishing them.

92.   Defendants' communications constituted libel *per se* by impugning the professional services and conduct of Plaintiff Chalifoux.

93.   Plaintiff Chalifoux is not a public figure.

94.   Despite being informed about the falsehoods in the statements about Plaintiff Chalifoux, Defendants have not retracted them.

95.   Defendants' defamatory statements were willful, wanton and malicious.

96.   As a direct and proximate result of the Defendants' Defamation, Plaintiff Chalifoux has and will suffer damages in the form of lost wages and earnings, loss of reputation, loss of earning capacity, increased medical malpractice premiums and other consequential damages as shall come to be learned through discovery.

97.   Plaintiff Chalifoux is entitled to recover

punitive damages as a result of Defendants' willful, wanton and malicious defamation.

## Count IV
### (Civil Conspiracy)

98.   Plaintiff Chalifoux incorporates herein all statements and allegations contained in this Complaint.

99.   Defendants, by their concerted actions as set forth hereinabove, to accomplish an unlawful purpose, as set forth hereinabove, or to accomplish a purpose, not itself unlawful, by unlawful means.

100. The unlawful purpose was to engage in a restraint of trade in violation of Section 1 of the Sherman Act.

101. The unlawful means was to violated Plaintiff Chalifoux' due process rights under the bylaws by engaging in a sham peer review process.

102. All of the Defendants acted in concert by the facts set forth hereinabove to conduct a sham peer review of Plaintiff Chalifoux in violation of his due process rights as set forth in the bylaws of Defendant WCH to accomplish an unlawful restraint of trade in violation of Section 1 of the Sherman Act to eliminate Plaintiff Chalifoux from competition in the pain management market in the Ohio Valley market leaving Defendants WCH and WVU Health with nearly unfettered access to

20

all pain management patients in the relevant market with either no or diminished competition.

103. Defendants' conspiracy in this regard has caused harm and damages to Plaintiff Chalifoux in the form of lost wages and earnings, loss of reputation, loss of earning capacity, increased medical malpractice premiums and other consequential damages as shall come to be learned through discovery.

### Count V
### (Tortious Interference)

104. Plaintiff Chalifoux incorporates herein all statements and allegations contained in this Complaint.

105. Plaintiff Chalifoux has contractual relationships with various health insurance providers to provide services to their customers who are his patients.

106. Defendants, as set forth hereinabove, have intentionally interfered with Plaintiff Chalifoux' contractual relationship with those various health insurance providers by conducting a sham peer review which resulted in the summary suspension and subsequent termination of his privileges at Defendant WCH.

107. The termination of Plaintiff Chalifoux' privileges at Defendant WCH based on the sham peer review and violation of his due process rights under the bylaws directly and proximately

resulted in the termination of Plaintiff Chalifoux' contracts with one or more of those health insurance providers.

108. Defendants' tortious interference in this regard has caused harm and damages to Plaintiff Chalifoux in the form of lost wages and earnings, loss of reputation, loss of earning capacity, increased medical malpractice premiums and other consequential damages as shall come to be learned through discovery.

109. Plaintiff Chalifoux is entitled to recover punitive damages from Defendants for their intentional conduct that tortiously interfered with his contractual relationship with those various health care providers.

**WHEREFORE**, having set forth his Complaint, Plaintiff Roland F. Chalifoux, Jr., D.O., prays that the Court:

1.   Enter a monetary judgment in favor of the Plaintiff and against the Defendants for compensatory damages, attorney fees and costs incurred in filing and prosecuting this action and punitive damages as a result of Antitrust violations and violation of due process and Sham Peer Review, defamation, civil conspiracy and the bad faith, vexatious, willful, wanton, malicious, intentional, and oppressive conduct of the Defendants in failing and refusing to follow their bylaws, policies and procedures referenced herein and conducting a Sham Peer Review,

as well as defamation of Plaintiff and acting in a civil conspiracy to do so; and

      2.   Grant such further relief as this Court may deem just and proper.

        **PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

                    ROLAND F. CHALIFOUX, JR., D.O.

                    By Counsel

s/Scott H. Kaminski
Scott H. Kaminski, Esq.
 (WV Bar No. 6338)
RAY, WINTON & KELLEY, PLLC
109 Capitol Street, Suite 700
Charleston, WV 25301
(304) 342-1141